## AMERICAN LAUNDRY MACHINERY CO. v. DEAN, Internal Revenue Collector.

## PROCTER & GAMBLE CO. v. SAME.

### (District Court, S. D. Ohio, W. D. July 24, 1923.)

### Nos. 3244, 3259.

1. **Internal revenue ⟪19(1)—"Original issue" of stock by corporation subject to stamp tax.**
   Under Revenue Act 1918, §§ 1100, 1107(2), being Comp. St. Ann. Supp. 1919, §§ 6318i, 6318p(2), imposing a stamp tax on each original issue, whether on organization or reorganization, of certificates of stock of a corporation, there can be no "original issue" of stock by an existing corporation, without an actual change either in the amount of such stock outstanding or in the kind or character of such stock.

2. **Internal revenue ⟪19(1)—Stamp tax on corporation stock based on par value and not on number of certificates.**
   Such statute makes the par value of the stock, and not the number of certificates, the basis of the tax.

3. **Internal revenue ⟪19(1)—Substituted issue of stock by corporation merely reducing par value of shares, held not subject to stamp tax; "original issue."**
   Where corporations to facilitate acquisition of their stock by employees and others, reduced the par value of their shares from $100 to $20, issuing to each stockholder five shares in exchange for each share held by him but without changing the aggregate par value of his stock or the aggregate par value of all outstanding stock, or the character of the stock, the new stock *held* not an "original issue," subject to stamp tax.

At Law. Actions by the American Laundry Machinery Company and by the Procter & Gamble Company against Charles M. Dean, Collector of Internal Revenue. On demurrers to petitions. Overruled.

Dinsmore, Shohl & Sawyer, of Cincinnati, Ohio, for plaintiffs.

Benson W. Hough, U. S. Atty., of Columbus, Ohio, Haveth E. Mau and A. Lee Beatty, Asst. U. S. Attys., both of Cincinnati, Ohio, and Chester A. Gwinn, of Washington, D. C., representing Solicitor for Internal Revenue Bureau, for defendant.

HICKENLOOPER, District Judge. These petitions are filed by the several plaintiffs for recovery of taxes paid under section 1100, Schedule A, paragraph 2, of the Revenue Act of 1921 (42 Stat. 227, 301, 303), and section 1100, Schedule A, paragraph 3, of the Act of February 24, 1919, commonly known as the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6318i). The language of both sections is identical, and by both it is provided that there shall be "levied, collected and paid, for and in respect of * * * certificates of stock, * * * or for or in respect of the vellum, parchment, or paper upon which such instruments * * * are written or printed, * * * the several taxes specified in such schedule." Schedule A, paragraph 2, provides for the above-mentioned stamp tax "on each original issue, whether on organization or reorganization, of certificates of stock * * * by any corporation, on each $100 of face value or fraction thereof, 5 cents."

In order to facilitate dealing in the stock of the plaintiff corporations, and the acquisition and wider distribution of such stock by and among employees, customers, and the public in general, amendments to the articles of incorporation were secured whereby the par value of the outstanding and issued shares of stock was reduced in amount, and holders of stock of the original $100 par value shares were given the right to, and did, transfer or convert such shares into the larger number of shares of reduced par value. Neither the aggregate par value of any holder nor the aggregate par value of all stockholders was increased, nor was the type of stock changed in other respect than in the number of shares outstanding. In other words, before the amendment the common capital stock of the Procter & Gamble Company consisted of $19,714,000, divided into 197,140 shares, of the par value of $100 each, while after the amendment had become effective such common capital stock still continued as the sum of $19,714,000, divided into 985,700 shares, of the par value of $20 each, and each holder of one share, of the par value of $100 each, had received in lieu of his certificate therefor a certificate for five shares, of $20 par value each. The defendant contends that these newly issued certificates are subject to tax under the laws above quoted.

There is no question that the taxes provided by the Revenue Acts in question are documentary stamp taxes. Malley v. Bowditch, 259 Fed. 809, 170 C. C. A. 609, 7 A. L. R. 608; Edwards v. Wabash Ry. Co. (C. C. A.) 264 Fed. 610. But, unlike the stamp tax upon promissory notes, the provisions of the law are not applicable to all certificates of stock, but by their express terms pertain only to certificates of "original issue." The question is not whether the certificates themselves are original, but whether the issue is original.

The defendant contends that in passing upon this point the court is constrained to look only to the certificates themselves, and to de-

termine whether any certificates identical in kind had theretofore been issued and outstanding, citing United States v. Isham, 17 Wall. 496, 21 L. Ed. 728. Were the question whether the certificates were ·in fact certificates of stock, or debentures, or some other type of instrument, the citation would be applicable; but since the court is of the opinion that the criterion must be the originality of the issue, inquiry must extend beyond the certificates themselves.

[1] An original issue of capital stock involves the idea of a change in the amount or kind of stock outstanding. Capital stock of corporations may be divided into several well-known classes. We thus find, among the recognized corporate issues, common stock, preferred stock of various classes, issues, and priorities, and the more recent and somewhat unique no par value stock. We are not at this time prepared to say that a change from par value common stock to no par value common stock would not constitute a change in the kind of capital stock outstanding, just as much as a change of common stock to a preferred stock, and vice versa, would constitute such change in kind; but we are firmly of the opinion that no original issue of stock can exist without either a change in the amount of such stock outstanding or in the kind or character of such stock.

Counsel for the plaintiff alleges that the criterion should be whether a corporation has assumed different obligations towards its several stockholders, or whether the stockholders have secured different "ultimate rights" against the corporation. This might be made the criterion, were the change in the kind or character of the stock outstanding, but will not apply, if the change be in amount of capital stock outstanding. No change of obligation upon the part of the corporation, or of ultimate right on the part of the stockholders, exists after the issuance of stock as a stock dividend; but there can be no question but that stock issued by way of dividend is an original issue and subject to tax.

The court places no reliance whatever upon the language of the law, "whether on organization or reorganization." These are not words of limitation, restricting the operation of the tax to the cases of original organization or reorganization of corporations, but are simply declaratory of the application of the law to cases of original organization and reorganization, as well as cases of all other original issues. As above stated, therefore, the question resolves itself into whether the present issues are original issues in the sense this phrase is used in the statute.

[2] The defendant contends that the new smaller par value shares cannot be a substitution for the shares turned in, of larger par value, because of the excess in number of the former over the latter. In the opinion of the court, this argument is specious, in that the law makes the par value of the stock the foundation of the tax, and not the number of shares. If the number of shares of the same par value were increased, and old certificates were exchangeable for new certificates for a greater number of shares, but each of the same par value, the point would be well taken, and no objection could be successfully urged against the taxation upon the additional number of shares so issued. In such a case there would be a change in the amount of such stock outstanding.

In the present case, however, there is no change in the aggregate par value of the common stock outstanding after the exchange and before. Nor is there any change in the rights and privileges, either in sharing in the earnings or participating in the management, as to any stockholder before and after he has exchanged his stock. The right to cast four or five votes, where the stockholder previously had the right to cast but one, in no way changes the proportionate voting power of the stockholder, or his proportionate interest in the assets and earnings of the corporation.

We are clearly of the opinion that, before any issue of capital stock can be designated an "original issue," some stock must pass from the treasury of the corporation into the hands of a stockholder, which either differs as to kind, class, or privileges from stock which had theretofore been outstanding, or which increases the aggregate par value of some previously outstanding class of stock. The change of kind, class, or privileges referred to must be a change in substance and in fact, and not a mere change in name or form.

In the instant case there was, in the opinion of the court, no change in the amount of the common capital stock outstanding. In each case this remained identically the same, as is already illustrated by the Procter & Gamble Company case cited above. There the aggregate par value of the common stock outstanding was the sum of $19,714,000 both before and after all shares had been exchanged for the lower par value. Nor was there any real change in the privileges attached to stock ownership. Certainly, the kind or character of the stock was not changed, being common stock both before and after the transaction. Nor was the transaction a reorganization of the corporation, in the sense in which that word is used in the statute. Reorganization, as there used, contemplates the surrender of the old stock and the receipt of either stock in a new corporation, or stock of a different kind or class in the old corporation.

[3] Not only do the several federal Revenue Acts predicate the tax upon the par value of the issue, thus recognizing capital stock as consisting of a definite monetary figure, but the general corporation laws of Ohio so define and fix the meaning of capital stock. Such capital stock consists of a definite, named amount of money, and the par value thereof, or the number of shares into which this fund is divided, is a collateral incident. In our opinion, the increase in the number of shares, with a corresponding reduction in the par value of each, involves no change in either the amount or kind of stock of the plaintiff companies, issued and outstanding, and cannot be considered as an original issue.

The demurrers must therefore be overruled.